STAPLES, J.
delivered the opinion of the court.
In this case, the vendor of a tract of land having taken two bonds for a balance of unpaid purchase money, made an assignment of the one last falling due, retaining the first in his own possession. The land is insufficient to satisfy both bonds, and the question before us is, which is entitled to priority of payment.
The representatives of the vendor or assignor, as he may be termed, insist that inasmuch as the bond retained first matured, it is, by the terms of the contract, to be first paid; and this affords a sufficient ground for precedence of satisfaction out of the fund provided as security for the debt.
In support of this pretension much reliance is placed upon the case of G wathmeys v. Ragland, 1 Rand. 466. In that case a deed of trust had been given to secure the payment of the debt. The obligee made an assignment of the second note. He after-wards assigned the third and last note to another person, and with it the deed of trust. This court held 'x'that the as-signee of the second note had the preferable right to satisfaction out of the proceeds of sale over the third note. The deed of trust followed the notes into the hands of the several holders, and it was not competent to the obligee, by an assignment of the deed to the holders of the third note, to deprive the first assignee of his priority of right to demand a sale of the trust property in the order of payment expressly directed by the deed.
I do not understand the court in that case as deciding that the maturity of the notes gave priority, but that the first assignee had by the act of assignment acquired rights which could not be defeated by any act of the assignor. One of these was the right to subject the proceeds of sale of the land to the satisfaction of his debt in the manner directed by the deed. The first as-signee being the holder of the note first due had the preference, as well by priority of assignment as by the express directions of the deed.
In the present case, the written agreement contains no stipulation whatever in regard to the time or mode of payment. One of the bonds is payable 1st of January 1859, and it is therein stated to be for the second payment of the purchase money. The other bond is payable the 1st of January 1860, and is stated to be for the third and last payment. Obligations of this sort, to pay in successive instalments, are usually, if not universally, made for the accommodation of the debtor. Ko one ever supposes the effect of such an arrangement is to give priority of satisfaction to the first instal-ments out of a common fund equally bound for the whole and every part of the debt.
The rule is well settled, that both deeds of trust and mortgages are regarded in equity as mere securities for the debt, and whenever the debt is assigned, the *deed of trust or mortgage is assigned or transferred along with it. Reading Cases in Equity, vol. ii, part 2, page 236. The same principles apply to the vendor’s lien, resulting from the retention of the legal title. 1 tomax’s Digest 220. The assignment or transfer of the note given for the purchase money operates as an assignment or transfer of the lien as effectually as it existed in the vendor. There is no controversy upon this point. The difficulty is in regard to the rights *446 arising' out of successive assignments of different debts, and the fund is insufficient to. discharge all of them, who has the better title to the security afforded by the lien? In such case, it seems to me the assignment of the bond carries with it the assignment of so- much of the lien as is necessary to pay the bond. If the vendor means to restrict or qualify the effect of the assignment, he should do so by express reservation. In the absence of such reservation, or some stipulation qualifying the rights of the parties, the assignee may justly regard the assignment as securing to him the benefit of the lien, so far as it is necessary to his protection or indemnity.
This question has been the, subject of judicial consideration in other states. In some of them it has been held that the rights of the assignor and assignee to the benefit of the incumbrance are equal, and the fund must be divided between them according to their several proportions. In none of them has it been held, so far as my reading extends, that the assignor is entitled to the preference merely by reason of his having retained the bonds first maturing. In Griggsby v. Hair, 25 Alab. R. 327, the very reverse was held. It is there decided, that where several notes taken for the purchase money of land are assigned at different times, the assignment of each note is pro tanto an assignment *of the vendor’s lien, unless expressly waived, and the liens of .the several assignees are to be preferred according to the priority of their assignments, without reference to the maturity of the notes. See also Bank of Mobile v. Plant. M. Bank of Mobile, 9 Alab. R. 645; Cullum v. Erwin, 4 Alab. R. 492.
In his Commentaries, 1 vol. 353, Judge Tucker takes substantially the same view. He thus lays down the rule: 1 ‘It is said if several bonds be "secured by mortgage, and the fund prove insufficient to pay all, and the bonds be assigned to different persons, who shall have priority? I should conceive that he should have preference who was first assignee; for by the assignment he at once acquired a preference over his assignor, who then remained the holder of the other bonds; and this preference would not be taken away by subsequent assignments.’’ It will be perceived that, according to Judge Tucker’s opinion, the priority of the parties depends not upon the maturity of the bonds, but upon the date of the assignment. In this view of the case he is strongly supported by the case of Taylor’s adm’r v. Spindle, 2 Gratt. 44, 71. In that case Glass had sold to Baker a tract of land for which Baker paid in cash, fifteen hundred dollars, and executed his four bonds for the deferred in-stalments, payable respectively in 1816, 1817, 1818 and 1819. It did not appear what had become of the two first bonds; it was alleged they had been paid. They were not, however, the subject of controversy. The bond díte in 1818 was assigned to Basye and by him to Spindle. That due in 1819 was assigned to Norman and by him to Rixey. This latter assignment was made in 1815; the date of the other does not appear. The purchaser of the land claimed an abatement of the purchase money on account of a deficiency in the number of acres; *and one of the questions in the case was as to the application of this abatement. Judge Standard, speaking for the court said, “If the assignment to Basye was prior to that of Rixey then the title to credit for the abatement would act first on the bond assigned to Rixey, and the bond assigned to Basye would be subject to credit for only the surplus, if any, of the abatement beyond the principal and interest of the bond assigned to Rixey.”
Clearly, according to Judge Standard’s opinion, the right of the parties was to be determined, not with reference to the time of the maturity of the bonds, but the date of the assignment. There would seem to be no substantial distinction between the case of a deficiency of the fund, arising from the mere depreciation of the property, and a deficiency resulting from an abatement of the purchase money. If the first assignee is entitled to throw upon the second the whole burden of the abatement of the purchase money, he may with equal reason, require him to bear the loss arising from the depreciation of the property, or from any other cause.
The same principles apply to the case of several purchasers at different times,. of several parcels of land, subject to the lien of a mortgage or deed of trust. It is well settled that the last purchasers can not call upon the first for contribution; but they, the former, must sustain the whole burden of the incumbrance to the extent of their purchase. In such case, as the alienor cannot call uppn the purchaser for contribution to the relie! of the land reserved by him, his subsequent alienee, standing in his place, can occupy no higher ground. Conrad v. Harrison, 3 Leigh 532; McClung v. Beirne, 10 Leigh 394.
The decisions I have cited relate to controversies *between successive assignees or alienees. Here the contest is between an assignor and an assignee: an assignor attempting to compete with his own assignee for preference of payment out of the common fund. The ground taken in the court below for this assumed preference is, that the assignee, by his want of due diligence against the obligor, has lost his right of recourse against the estate of the assignor. I do not think the right of the assignee to subject the land fund results at all from the personal liability of the assignor, or that the failure to pursue the obligor affects the right to enforce the lien upon the land.
The assignee, in the case supposed, has three remedies: An absolute right to resort to the debtor himself; 2d, to the lien upon the land; and 3d, contingently to the assignor himself. The loss of the latter remedy, by the want of due diligence, can no more affect the right of recourse to the land than it can affect the right of reverting to *447 the debtor himself. The assignment of the bond is, ipso facto, an assignment of the lien. Having once vested by the assignment, that lien is not divested by the failure to sue the debtor. The assignee having two remedies, both absolute and undoubted, may resort to either. The case of Rippordon v. Cogine, 8 B. Mon. R. 465, is a direct authority upon this point. The court say, the fact that the assignee had no recourse upon the assignor, did not sever the lien from the note; but as he (the as-signee) acquired the equitable right to the note itself, he acquired with it the equitable right to all remedies for its enforcement. The continued substance of the lien in his (the assignee’s) favor, or for his benefit, does not depend upon the subsistence or continuance of a personal liability of the assignor to him, nor upon *there being a written transfer of the note passing the legal title.
In the present case, the charge of laches equally applies to the assignor as to the assignee. At the time of the assignment the first bond had been due several months; the second was not due until the first of January thereafter. So that the assignor had nearly a year the advantage of the as-signee in prosecuting a suit against the common debtor. But he wholly failed to take any step to enforce this liability. Under the circumstances, the assignee had the right to suppose the first bond had been paid, or at any rate that it would constitute no obstacle in his way. During all the succeeding years it does not appear he had the slightest intimation the debt had not been paid, or that the assignor claimed the right to appropriate to his exclusive use the benefit of a security he had already transferred to the assignee. Under these circumstances, it seems to me the assignee has the superior equity; and if a loss is to ensue from the partial failure of the security, it ought not to be imposed upon him.
It only remains to notice one other ground taken by the counsel of the appellee — it is, that the vendor reserving the legal title may, upon default in the payment of the purchase money, bring his ejectment against the purchaser, and recover and hold possession of the premises; and he cannot be required to convey the title or surrender the advantage until his purchase money is paid. The argument proves too much. It is conceded that if the vendor assigns the bond first due, the assignee has the preferable right to subject the land; and yet, in that case, the vendor having the legal title may recover in ejectment, and it might be contended with equal reason he could not be compelled *to surrender this advantage, or make a conveyance until the amount of the second bond is paid him. The answer to all this reasoning is, that if the vendor having assigned one of the bonds given for the purchase money, brings his ejectment against the purchaser, and recovers the possession, he recovers in subordination to the rights of the assignee. The assignee having by the assignment acquired the benefit of the lien, whatever it may be, is entitled to all the remedies of the vendor to enforce it. He cannot be deprived of these remedies by any act of the vendor. If the bond in the hands of the assignee is not paid, he may go into a court of equity to enforce the lien. The land being sold under the decree of the court, a commissioner may convey the title to the purchaser. Whether the vendor is or is not satisfied his debt, the sale is effectual to divest him of all interest in or control over the land thus sold under a decree of the court.
I cannot perceive, therefore, how in a contest between the vendor and his assignee the former can derive any advantage from his retention of the legal title, or from the fact that he may recover in ejectment against the purchaser who may be in default. If, as I have attempted to show, the assignee has the preferable right to the land fund, all the rights of the vendor as against the vendee must be held to be in subordination to that right. Upon the whole, whether we consider the case upon general principles, or with reference to the peculiar circumstances attending it, I think the as-signee has the superior equity. The decree of the Circuit court must therefore be reversed with costs.
A question arises, however, as to the extent of the reversal. At the time the decree of the Circuit *court was rendered ordering a sale of the land the assignee was not a party to the suit. This was clearly erroneous; no decision ought to have been made adjudicating the question of priority or directing a sale, until the vendor and the assignee, or their representatives, were before the court. i)ach was directly interested in making the land bring a sum sufficient to satisfy the respective debts. The assignee was, therefore, an indispensable party, and if he and the representatives of the vendor were alone concerned in the subject matter, there would be no difficulty as to the decree to be entered here. But in the meantime a purchaser has intervened ; all the purchase money may have been paid, a deed executed, and other valuable rights accrued, which cannot be disregarded by the courts. Now while it is true that a purchaser at a judicial sale must see to it at his peril that all persons who are interested in the title are before the court, this court is not in possession of sufficient information to determine whether this rule can be justly applied to the persons who may be in possession of the land under said decree. The purchaser ought to have an opportunity of being heard. The cause must therefore be remanded to the Circuit court, and if the appellees desire it, a rule awarded against the purchaser to show cause why the sale should not be set aside, and such proceedings thereupon had as the case may require. But in no event is the sale to be set aside and the land resold except at an upset price; and the appellees will be required to give bond with proper security for a substantial advance upon the price stipulated for by the present purchaser.
*448 MONCURE, P., dissented.
*The decree was as follows:
This day came again the parties by their attorneys, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellant, William H. McClintic, has the preferable right to satisfaction of the bond in his hands out of the proceeds of the sale over the bond retained by the vendor; and that the Circuit court erred in holding that said bonds must be paid in the order in which they matured. It is therefore adjudged, ordered and decreed, that the decree of the Circuit court, of the 14th day of May 1872, be reversed and annulled, and that the appellees pay to the appellant his costs by him expended in the prosecution of his appeal here.
The court is further of opinion that the said Circuit court erred in decreeing a sale of the land until the said William McClintic was, by some proper proceeding, brought before the court, and the question of priority settled between the conflicting claimants. And this court would for said error now reverse the decree of the 16th day of October T869, and set aside the sale thereunder, but that the purchasers at that sale are interested in the decision of that question, and ought to have an opportune of being heard in opposition to any order affecting their interest. The court doth therefore order that this cause be remanded to the Circuit court, and that a rule, if desired by the ap-pellees, be awarded by that court against said purchasers, to show cause why said sale shall not be set aside, and thé said tract of land be resold; and thereupon the said court shall render such decree in the premises as may be just and proper under all the circumstances. *In no event, however, is said sale to be set aside and a resale ordered, unless the appellees, or some one for them, shall give bond with proper security before said court, for a substantial advance upon the price for which said property heretofore sold. And it is further ajdudged and ordered, that in the event no such resale shall be made, the fund now under the control of the court, the proceeds of the sale of the land is to be applied, or so much of it as is necessary, to the satisfaction of the appellant’s debt, and the residue, if any, to that of the appellees. Which is ordered to be certified to the said Circuit court of Bath county.
Decree reversed.